UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 4674

------------------------------------------------------x
LEANDRO IACONO, DEBORAH COLLINS, and
ULYSSES McGHEE, individually and on behalf of all others
similarly situated,
                Plaintiffs,

       v.

BITINSTANT, LLC,
                Defendant.
------------------------------------------------------x

Civ. Action No:

RECEIVED JUL -8 2013 U.S.D.C. S.D.N.Y. CASHIERS

## CLASS ACTION COMPLAINT

Plaintiffs Leandro Iacono, Deborah Collins, and Ulysses McGhee ("Plaintiffs"), by and through their undersigned counsel, Giskan Solotaroff Anderson & Stewart LLP, individually and on behalf of a class (the "class") of others similarly situated, bring this action against Defendant BitInstant, LLC ("Defendant" or "BitInstant") and allege as follows:

### NATURE OF ACTION

1. This case arises from BitInstant's false representations about its services and the inflated fees that it failed to refund as promised. This case also arises from BitInstant's violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et. seq.* ("EFTA").

2. BitInstant purports to provide a means to rapidly pay funds to bitcoin exchanges far faster than other bitcoin processing services. In fact, BitInstant claims that customers can receive "coins within an hour or two." Those representations are disingenuous.

3. BitInstant also promises that it will refund its fees to customers who experience undue delays in the processing of their transactions. Those representations are also disingenuous.

4. BitInstant also fails to make electronic transfers in a timely manner when properly instructed to do so, and fails to disclose its inability to process transactions within the time limits it promises, in violation of federal law.

5. Plaintiffs and the class seek relief from Defendant for its false representations about the speed of its processing services and its refund policy. Plaintiffs and the class members relied upon the false representations about the speed of BitInstant's processing services and relied upon the false representations about BitInstant's refund policy when choosing to engage Defendant's services. Plaintiffs and the class also seek relief from Defendant for its improper failure to carry out electronic fund transfers in a timely manner and in accordance with Defendant's published terms and conditions, in violation of the EFTA.

6. Plaintiffs bring this action to enjoin BitInstant from continuing its deceptive and unlawful practices, to require BitInstant to refund fees paid by consumers for expedited services those consumers never received, for disgorgement of all profits attributable to BitInstant's unlawful practices, and for such other relief as requested below.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant because BitInstant does systematic and continuous business and has a place of business in this judicial district.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a) because Defendant is subject to personal jurisdiction in this judicial district and has committed unlawful acts in this judicial district. In addition, Defendant has its principal place of business in this judicial district.

## THE PARTIES

10. Defendant BitInstant, LLC is a New York corporation with its principal place of business at 20 West 23rd Street, New York, New York 10010. BitInstant owns and operates a website (https://www.BitInstant.com/) that provides a platform for bitcoin transfers. BitInstant maintains numerous accounts belonging to consumers and routinely sets them up for electronic funds transfer.

11. Plaintiff Leandro Iacono is a resident of Florida. In reliance on BitInstant's misleading claims about the speed of its transactions and its refund policy, Plaintiff Iacono chose to buy bitcoins through BitInstant instead of using less expensive payment processors. On April 11, 2013, Mr. Iacono made a purchase order for $500 worth of bitcoin. BitInstant did not execute his order for approximately five hours. BitInstant's delay in processing the order caused Mr. Iacono to lose approximately $120. Mr. Iacono pursued the matter with BitInstant by filing a "support ticket" on its website. He also filed a request for support on BitInstant's Facebook.com page. Although he was told that someone would investigate his situation, he did not receive any further customer support and never received a refund from BitInstant. Had Mr. Iacono known the truth about BitInstant's representations about the speed of its service or its refund policy, he would not have used BitInstant's services and would have instead used the services of a less expensive payment processor.

12. Plaintiff Deborah Collins is a resident of Pennsylvania. In reliance on BitInstant's misleading claims about the speed of its transactions and its refund policy, on April 11, 2013, Ms. Collins sent $303.95 to BitInstant, which, after fees, entitled her to $288.03 worth of Bitcoins. At the time she deposited her money, one Bitcoin cost approximately

3

$85. Instead of processing her transaction within the hour, however, BitInstant took eight hours to process her transaction. By the time BitInstant processed her transaction, the price of bitcoins had increased to approximately $131 each. Like Mr. Iacono, Ms. Collins pursued the matter with BitInstant by filing a "support ticket" on its website. She also filed a request for support on BitInstant's Facebook.com page. Although she was told that someone would investigate her situation, she did not receive any further customer support and never received a refund from BitInstant. Had Ms. Collins known the truth about BitInstant's representations about the speed of its service or its refund policy, she would not have used BitInstant's services.

13. Plaintiff Ulysses McGhee is a resident of Pennsylvania. In reliance on BitInstant's misleading claims about the speed of its transactions and its refund policy, Mr. McGhee chose to buy bitcoins through BitInstant instead of using less expensive payment processors. On April 8, 2013, Mr. McGhee ordered $30 worth of bitcoin on BitInstant. However, BitInstant did not process Mr. McGhee's order until April 16, 2013. Mr. McGhee registered several complaints with BitInstant about the delay. Although BitInstant assured him that it would address his situation, it never refunded Mr. McGhee's fee. Had Mr. McGhee known the truth about BitInstant's representations about the speed of its service or its refund policy, he would not have used BitInstant's services and would have instead used the services of a less expensive payment processor.

## FACTS

14. Bitcoin is an encrypted, virtual currency invented in 2009. Bitcoins have value; they can be exchanged for other forms of currency, including dollars. Bitcoin's value fluctuates

quickly and dramatically. As of April 2013, the cumulative value of all bitcoins in circulation was reported to be as high as $1.5 billion.

15. Bitcoin exchanges enable consumers to buy and sell bitcoins. Bitcoin exchanges accept payment through payment processors, like BitInstant.

16. BitInstant permits its users to deposit dollars and, for a fee, buy bitcoins from exchanges. Those transactions are made pursuant to services agreements that encompass the deposit, retention, safekeeping, and withdrawal of customers' deposits.

17. Since the value of Bitcoins is highly volatile, consumers pay a premium to BitInstant for the fast transaction speed BitInstant purports to provide. But BitInstant has repeatedly failed to deliver on its promise, and consumers who have paid BitInstant's premium fees have had their funds tied up for hours, days or even weeks.

18. Upon information and belief, since BitInstant began operating, their website has been replete with uniform deceptive statements about the timing of its transactions. As of this writing, BitInstant's website makes the following statements:

    a. "Make cash deposit at any major bank and receive your coins within an hour or two."

    b. "With BitInstant's online bank transfer method, you can have bitcoins in minutes."

    c. "We provide a means to rapidly pay funds to bitcoin exchanges far faster than the usual method . . . ."

    d. "You can have bitcoins 30 minutes from now."

    e. "We are an agent of the exchange, so when you pay us, you have effectively paid the exchange."

5

19. BitInstant understands that, when it comes to buying bitcoins, time is of the essence. Its website emphasizes that BitInstant is unlike other, slower payment processors:

    f. "Traditionally, bitcoin exchanges handle deposits using several methods, some of which can be annoyingly slow with delays of up to a week before funds are available for use. During this waiting period, exchange rates can fluctuate and you may not get the same amount you would have been able to get at the time you began your deposit."

20. BitInstant purports to offer an expeditious alternative, for which customers are required to pay a premium:

    g. "We provide a means to rapidly pay funds to bitcoin exchanges far faster than the usual method by automating the entire process.

21. BitInstant underscores the supposed quality of its service with a specious refund guarantee:

    h. "If we screw up and fail to deliver on time, we will always investigate and we will always refund our fees."

22. BitInstant's uniform, deceptive claims regarding the timing of its transactions are repeated and reinforced to such an extent that anyone visiting their website would necessarily be exposed to them. BitInstant's deceptive representations are intended to induce customers to purchase its services, and those deceptive representations are effective.

23. Many of the individuals who have been misled by BitInstant's false representations about the speed of its services have posted complaints around the internet. The following is a sample of representative complaints appearing on BitInstant's blog:

i. John M, April 12, 2013 – I bought $1000 in btc with BitInstant. It took 5 hours to get the funds after I paid. Over that five hours the price of bitcoin fluctuated between mid 90's up to as high as $128-9ish then back down to $105. Guess what price they gave me my $1000 in yep, over $128. This price happen over an hour after I bought and paid. NOT INSTANT. Seems like I got scammed. VERY VERY VERY unhappy.

j. Will, April 13, 2013 – "[M]y transaction has been in limbo for seven days now."

k. Illegal, April 14, 2013 – "Pure crooks at heart and these issues are going to be forwarded to the SEC, US Attorney General's office and Inspector General's Office . . . . I STILL DON'T HAVE MY MONEY FOR OVER ONE WEEK . . . ."

l. Ice, April 15, 2013 – "[I]t's been 5 days and order is not completed. If you have problem with paying towards destination why you can't just cancel my damn order and put my money back where they were?"

m. Drew, April 15, 2013 – "It has been 5 days on my order I have contacted them receiving what was obvious prepared message. It even says my order has been confirmed yet nothing no hint at my transaction going through. I was looking forward to getting my money before the market shoots back up. But it does not seem like that will be happening by the comments here. It's understandable to have a delay of a day or 2 especially with the heavy traffic but 5 days come on."

n. Fred, April 16, 2013 – "Its been 6 days for me with no word from customer support."

  o. Jras, April 18, 2013 – "I have 320 floating from a money transfer that has been in limbo for almost two weeks now."

24. There is also a website dedicated to dissatisfied BitInstant customers, called BitInstantScam.com. Contributors complain that while BitInstant purports to execute orders in under an hour, many wait more than 24 hours to receive their bitcoins.

25. Without discovery Plaintiffs cannot know the details of the bases of Defendant's deceptive claims concerning the timing of its trades. Still, there appears to be no adequate support for BitInstant's deceptive representations about the speed of their service or their refund policy. BitInstant consistently misleads consumers into thinking that they provide expedited services, and that they will refund fees whenever they "screw up and fail to deliver on time." Reasonable consumers would not have paid the elevated fees charged for BitInstant's services if they knew the truth, that there is nothing to support BitInstant's claim that customers can receive bitcoins within two hours, or that BitInstant will refund the fees paid if they make a mistake.

## CLASS ALLEGATIONS

26. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following class:

> All residents of the United States with BitInstant accounts who in the last year made dollars-to-bitcoin transfer requests that BitInstant did not execute within two hours.

27. Plaintiffs reserve the right to amend the class definition if discovery and further investigation reveal that the class should be expanded or otherwise modified. Plaintiffs also reserve the right to establish subclasses, as appropriate.

28. The class is so numerous that joinder of all members is impracticable. While the exact number of class members is in the sole possession, custody, and control of the Defendant, Plaintiffs believe that there are a thousand or more members of the class.

29. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class. Among questions of law and fact common to the class are:

    a. Whether BitInstant engaged in unlawful, unfair, misleading, or deceptive business acts or practices and/or misleading advertising of its services;

    b. Whether BitInstant omitted material facts from its communications and disclosures regarding its services;

    c. Whether BitInstant failed to disclose its inability to process transactions within the time limit governed by its services agreement;

    d. Whether the class has suffered damages as a result of BitInstant's actions, and, if so, the measure and amount of such damages.

30. Plaintiffs' claims are typical of the claims of other members of the class they seek to represent. Defendant's illegal practices have targeted and affected all members of the class in a similar manner, i.e., they have all sustained damages arising out of Defendant's willful conduct in violation of the law.

31. Plaintiffs will fully and adequately protect the interests of all members of the class. Plaintiffs have retained counsel experienced in both complex class action and consumer protection litigation. Plaintiffs have no interests which are adverse to or in conflict with other members of the class.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense. It would also assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

33. The interests of members of the class in individually controlling the prosecution of separate actions is theoretical rather than practical. The class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for class members to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## AS AND FOR A FIRST CAUSE OF ACTION
(Violation of the Electronic Funds Transfer Act – 15 U.S.C. § 1693 *et seq.*)

34. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

35. The transactions that Plaintiffs and class members instructed BitInstant to execute were electronic fund transfers as defined in 15 U.S.C. § 1693a(6) because they were transfers of funds, not originated by check, draft, or similar paper instrument, initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.

36. BitInstant is a financial institution as defined by 15 U.S.C. § 1693a(9) because it directly holds accounts belonging to consumers.

37. BitInstant violated 15 U.S.C. § 1693c by failing to provide proper disclosures regarding the terms and conditions of their electronic transfers. Defendant violated 15 U.S.C. §1693c when it failed to disclose to Plaintiffs and class members that its system was unable to process transactions within the time limits advertised on its website. Defendant did not at any time correct its disclosures to state that its system was unable to process transactions within the limits it promised.

38. BitInstant violated 15 U.S.C. § 1693h when it failed to make electronic funds transfers in a timely manner.

39. Plaintiffs and class members were damaged by Defendant's failure to make electronic fund transfers in accordance with the terms and conditions of their accounts and in a timely manner when properly instructed to do so by Plaintiffs and class members because Plaintiffs and class members received fewer bitcoins than they would have received had Defendant timely processed their transaction.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract/Breach of Good Faith and Fair Dealing)

40. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

41. Plaintiffs and class members entered into one or more terms of service with BitInstant, whereby BitInstant agreed to, among other things, do each of the following with respect to any monies deposited by Plaintiffs and class members:

    a. to comply with Plaintiffs' and class members' instructions concerning the transfer and disposition of said monies within a certain period, and

    b. to refund fees in situations where BitInstant was responsible for any delay in transferring and disposing of said monies within the time limit.

42. The legal effect of Plaintiffs' and class members' agreement with BitInstant was to create legally binding obligations on the part of BitInstant.

43. Plaintiffs and class members have performed all conditions, covenants, and promises required of them by their agreements with BitInstant, and in accordance with the terms and conditions thereof.

44. BitInstant breached those agreements by failing to process Plaintiffs' and class members' transactions within the designated amount of time.

45. BitInstant breached those agreements by failing to refund fees to Plaintiffs and class members when it failed to process Plaintiffs' and class members' transactions within the designated amount of time.

46. Plaintiffs and class members have suffered certain general, special, incidental, and consequential damages as a direct and proximate result of BitInstant's breaches, including, among other things, the loss of the use of their monies while the transactions were pending; increases in the cost of bitcoin because of fluctuating exchange rates; and the loss of the fees they paid to BitInstant for expedited services they never received.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

47. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

48. BitInstant was enriched when it:

    a. charged a premium to Plaintiffs and class members for expedited services that it did not perform; and

    b. failed to reimburse Plaintiffs and class members said monies when the expedited services were not performed.

49. The enrichment of BitInstant was at the expense of Plaintiffs and class members.

50. BitInstant's retention of the benefits of the monies charged for services it did not provide to Plaintiffs and the class members would be unjust.  Equity and good conscience require BitInstant to make restitution to Plaintiffs and the other members of the class.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Negligence)

51. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

52. BitInstant had monies belonging to Plaintiffs and class members in its possession, custody, and/or control, and owed a duty of care with respect to safeguarding said monies.

53. BitInstant breached its duty of care to Plaintiffs and class members by negligently performing its obligations, including but not limited to failing to promptly and completely execute the dollars-to-bitcoin exchanges as initiated by Plaintiffs and class members, thereby causing Plaintiffs and class members to pay unnecessary fees and lose money when the price of bitcoin increased while their transactions were pending.

54. Plaintiffs and class members have suffered certain general, special, incidental, and consequential damages as a direct and proximate result of BitInstant's negligence, including, among other things, the loss of the use of their monies while the transactions were pending; increases in the cost of bitcoin because of fluctuating exchange rates, and the loss of the fee they paid to BitInstant for expedited services they never received.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the class, pray for judgment, as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as representatives of the class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Ordering restitution to class members of all fees collected by BitInstant for services that Plaintiffs and class members did not receive;

(c) Ordering BitInstant to disgorge all profits made as a result of its deceptive practices as alleged herein;

(c) Awarding statutory, proximate, and/or actual damages as appropriate;

(d) Awarding Plaintiffs and the other class members their costs and disbursements incurred in connection with this action, including reasonable attorney's and experts' fees, and other expenses incurred in prosecuting this action; and

(e) Granting pre-judgment interest and such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: July 7, 2013

Respectfully submitted,

GISKAN SOLOTAROFF ANDERSON & STEWART LLP

_____
Oren Giskan
Raymond Audain
Giskan Solotaroff Anderson & Stewart LLP
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315
ogiskan@gslawny.com
raudain@gslawny.com
*Counsel for Plaintiffs and the Class*

15