UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LEANDRO IACONO, DEBORAH COLLINS,  :
and ULYSSES McGHEE, individually and on
behalf of all others similarly situated,     :

         Plaintiffs,     :

    -against-

BITINSTANT, LLC,     :

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CASE NO. 13-cv-04674-CM

MOTION TO DISMISS

**MEMORANDUM OF LAW SUBMITTED BY DEFENDANT BITINSTANT, LLC IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

PERKINS COIE LLP
   Keith W. Miller
   Jalina J. Hudson
   Jean-Jacques Cabou (*Pro Hac Vice*)
   30 Rockefeller Center
   New York, New York 10112
   *Attorneys for BitInstant, LLC*

October 3, 2013

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.     BitInstant Is Not a Financial Institution Subject to the EFTA ............................ 3

     A.     BitInstant Is Not a Bank ...................................................................... 4

     B.     BitInstant Does Not Hold "Accounts" Established for "Personal, Family, or Household Purposes" ................................................. 4

II.     BitInstant Does Not "Hold" Consumer Assets or Conduct "Transfers" of "Funds" Within the Meaning of the EFTA ................................................. 5

     A.     BitInstant Does Not "Hold" Consumer Assets ........................... 5

     B.     BitInstant Conducted No "Transfers" of "Funds," Certainly Not to Plaintiffs ................................................................................. 6

III.     Plaintiffs Do Not Plausibly Allege State Law Claims ......................................... 8

     A.     Breach of Contract and Duty of Good Faith and Fair Dealing ................. 8

     B.     Unjust Enrichment ............................................................................ 8

     C.     Negligence ........................................................................................ 9

IV.     Granting Leave to Amend Would Be Futile ....................................................... 10

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

## CASES

*AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*,
  897 F. Supp. 724 (S.D.N.Y. 1995)...................................................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................... 4, 5

*Automated Salvage Transp. v. Wheelabrator Envtl. Sys., Inc.*,
  155 F.3d 59 (2d Cir. 1998)................................................................................................ 4

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006)............................................................................................ 10

*Calcutti v. SBU., Inc.*,
  223 F. Supp. 2d 517 (S.D.N.Y. 2002)............................................................................. 11

*Ciriello v. Dep't of Def.*,
  No. Civ. 3:01CV2149, 2001 WL 34312993 (D. Conn. 2001)......................................... 13

*Fink v. Time Warner Cable*,
  810 F. Supp. 2d 633 (S.D.N.Y. 2011), *aff'd*, 714 F.3d 739 (2d Cir. 2013) ............................. 10

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996)............................................................................................. 10

*Hess v. Cohen & Slamowitz LLP*,
  637 F.3d 117 (2d Cir. 2011)............................................................................................. 4

*In re Hydrogen, L.L.C.*,
  431 B.R. 337 (Bankr. S.D.N.Y. 2010) ........................................................................... 11

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........................................................................... 11

*Jones v. Ford Motor Credit Co.*,
  358 F.3d 205 (2d Cir. 2004)............................................................................................. 4

*KBL Corp. v. Arnouts*,
  646 F. Supp. 2d 335 (S.D.N.Y. 2009)............................................................................. 13

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
  863 F. Supp. 2d 288 (S.D.N.Y. 2012).............................................................................. 11

*Montefiore Med. Ctr. v. Teamsters Local 272*,
  642 F.3d 321 (2d Cir. 2011)............................................................................................. 4

# TABLE OF AUTHORITIES
## (continued)

Page

*Oneida Indian Nation of N.Y. v. Madison Cnty.*,
   665 F.3d 408 (2d Cir. 2011)...................................................................5, 10

*Parker v. George Thompson Ford, Inc.*,
   83 F.R.D. 378 (N.D. Ga. 1979).................................................................12

*SEC v. Shavers*,
   No. 4:13 CV 416, 2013 WL 4028182 (E.D. Tex. Aug. 6, 2013)................................9

*Seltzer v. Carte Blanche Corp.*,
   76 F.R.D. 199 (W.D. Pa. 1977) .................................................................12

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)...........................................................................4, 5

*United States v. Desposito*,
   704 F.3d 221 (2d Cir. 2013)....................................................................9

## STATUTES

15 U.S.C. § 1693, *et seq*..........................................................................3

15 U.S.C. § 1693a(2) .............................................................................5

15 U.S.C. § 1693a(7) .............................................................................8

15 U.S.C. § 1693a(9) .............................................................................5

28 U.S.C. § 1367..............................................................................4, 5

28 U.S.C. § 1367(c)(3).......................................................................3, 13

## OTHER AUTHORITIES

12 C.F.R. pt. 1005 ("Regulation E")...............................................................6

12 C.F.R. § 1005.2(b)(1).........................................................................6

76 Fed. Reg. 81023 (Dec. 27, 2011) ..............................................................6

Black's Law Dictionary (9th ed. 2009)............................................................9

*Electronic Fund Transfers*, 71 Fed. Reg. 51437, 51441 (Aug. 30, 2006) ........................7

Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/funds (last
   visited October 3, 2013)......................................................................9

Sec. & Exch. Comm'n, "Investor Alert: Ponzi Schemes Using Virtual Currencies" (Jul.
   2013), *available at* http://www.sec.gov/investor/alerts/ia_virtualcurrencies.pdf ......7

iii

Defendant BitInstant, LLC ("BitInstant") by and through its counsel, Perkins Coie LLP, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367(c)(3).

## PRELIMINARY STATEMENT

Plaintiffs are three individuals filing suit on behalf of a putative class of dissatisfied customers of BitInstant, a Limited Liability Company that provides a user-friendly interface to consumers wanting to acquire virtual currency called "Bitcoins" or to receive payment in dollars for Bitcoins they already own. Plaintiffs assert that they were entitled to a certain standard of service when BitInstant processed their transactions, and they claim that the service Plaintiffs received fell below that standard. Essentially, the claims in the Complaint are garden-variety breach of contract claims. Without any citation or reference, the Complaint alleges that BitInstant breached unspecified "agreements" by failing to process transactions in a timely manner or issue refunds for the purported delays. *See* Compl. ¶¶ 44-45. The Complaint also relies on a supposed "sample of representative complaints" submitted on a blog by unidentified individuals with "user names" such as "John M.," "Illegal," "Fred," "Will" and "Ice." *Id*. ¶ 23. The pseudonyms, on their faces, raise obvious questions both about the veracity of their allegations, and about the legitimacy of the identities of the purportedly distinct complainers.

As their sole basis upon which to claim federal jurisdiction, the three named Plaintiffs assert a single federal claim under 15 U.S.C. § 1693, *et seq*., the Electronic Fund Transfer Act ("EFTA"). This claim, however, fails because BitInstant is not a "financial institution" within the meaning of the EFTA, and because BitInstant's conduct does not fall within the scope of the statute. Because Plaintiffs do not state a federal claim and there is no other basis for this Court to

exercise supplemental jurisdiction over their state law claims, the Complaint should be dismissed in its entirety, with prejudice.

## STANDARD OF REVIEW

It is well-settled that in evaluating a motion to dismiss, this Court may consider only facts alleged in the Complaint, its supporting documents, and matters of which judicial notice may be taken. *Automated Salvage Transp. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998). The Court must accept well-pleaded allegations of material fact as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and construe well-pleaded, non-conclusory factual allegations in plaintiff's favor. *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 119 (2d Cir. 2011). The Court, however, is not required to accept as true those allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Iqbal*, 556 U.S. at 678. Particularly, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* A complaint that alleges facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief,'" and thus does not state a claim upon which relief can be granted. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

When presented with claims that are premised on supplemental jurisdiction pursuant to 28 U.S.C § 1367, "a federal court must first have before it a claim sufficient to confer subject matter jurisdiction." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011). Supplemental state law claims must be part of the same case or controversy as the jurisdiction-invoking claim by sharing a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 n.5 (2d Cir. 2004) (explaining that § 1367 acts as Congressional codification

2

of the *Gibbs* test for supplemental jurisdiction).  Therefore, when federal claims "are dismissed before trial, the state law claims should be dismissed as well."  *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) (citations and internal quotation marks omitted); *see also Gibbs*, 383 U.S. at 726.

## ARGUMENT

This Court lacks jurisdiction over this action because Plaintiffs fail to allege facts -- and indeed no such facts exist -- sufficient to sustain their single federal claim under the EFTA.  In addition, even construing the Complaint's allegations in the light most favorable to the Plaintiffs, the Complaint fails to satisfy each element of the state law claims presented.  Finally, granting leave to amend would be wasteful of this Court's and the parties' time and resources, as the very natures of Bitcoin and of BitInstant make it highly unlikely that Plaintiffs would be able to satisfy the legal elements of their claims.

### I.    BitInstant Is Not a Financial Institution Subject to the EFTA

The EFTA imposes obligations on "financial institutions," which are defined as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer."  15 U.S.C. § 1693a(9).  Most simply, the Complaint should be dismissed because BitInstant is not a financial institution.  Although Plaintiffs make a bare allegation that BitInstant is a financial institution, Compl. ¶ 36, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  And BitInstant, as a matter of law, is not a financial institution.  *See* 15 U.S.C. § 1693a(2).

3

A.   **BitInstant Is Not a Bank**

BitInstant is not a bank or credit union (and Plaintiffs do not so allege), thus, the only way it can be a financial institution for purposes of the EFTA is if it is "holds an account belonging to a consumer." *Id.* § 1693a(9).[1]

B.   **BitInstant Does Not Hold "Accounts" Established for "Personal, Family, or Household Purposes"**

The EFTA defines an "account" as "a demand deposit, savings deposit, or other asset account . . . as described in regulations of the Bureau [of Consumer Financial Protection], established primarily for personal, family, or household purposes." *Id.* § 1693a(2). The EFTA's implementing regulation, 12 C.F.R. pt. 1005 ("Regulation E"), defines "account" to mean "a demand deposit (checking), savings, or other consumer asset account . . . held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes."[2] Regulation E further provides that such accounts must be used "to debit and credit funds," such as a checking account would be. *Id.* § 1005.2(b)(1). The facts as alleged in the Complaint make clear that BitInstant did not hold "accounts" for purposes of the EFTA. The Plaintiffs do not allege, and it is not the case, that any of them had either dollars or Bitcoins in an "account" at BitInstant. Rather, Plaintiffs allege that each of them used BitInstant's service to conduct a transaction in which they paid BitInstant a specific amount of dollars and from which they expected to receive a corresponding amount of Bitcoins through BitInstant's service.

---

[1]     To the extent that the Court might question this conclusion, BitInstant respectfully asks the Court to take judicial notice that BitInstant is a Limited Liability Company formed in the State of New York and it holds no charter or license as a bank or credit union.

[2]     Regulation E was originally promulgated by the Federal Reserve Board, and has subsequently been re-adopted by the Consumer Financial Protection Bureau. *See generally Electronic Fund Transfers (Regulation E)*, 76 Fed. Reg. 81023 (Dec. 27, 2011).

4

Compl. ¶¶ 11-13.  They did not, as required by the EFTA, have an "account" "such as a checking account" from which they, or BitInstant "could debit and credit funds."  Rather, according to the Complaint itself, they simply were users of BitInstant's "services," *id.* ¶ 5, users who now complain about "the speed of BitInstant's processing services," *id.*, and "about BitInstant's refund policy."  *Id.*[3]

## II.   BITINSTANT DOES NOT "HOLD" CONSUMER ASSETS OR CONDUCT "TRANSFERS" OF "FUNDS" WITHIN THE MEANING OF THE EFTA

Even assuming Plaintiffs had established "accounts," BitInstant's activities are beyond the reach of the EFTA because it does not "hold" consumer assets or conduct "transfers" of "funds" as contemplated by the statute.

### A.   BitInstant Does Not "Hold" Consumer Assets

BitInstant allows its users to obtain or sell Bitcoins.  Period.  And Plaintiffs allege only that they tried to obtain Bitcoins.  As discussed above, BitInstant holds no funds or assets in any customer account.  Plaintiffs' allegations are not to the contrary.  Rather, Plaintiffs allege that BitInstant is a "platform for bitcoin transfers," *id.* ¶¶ 10, 15, that acts as "the agent of the exchange, so when you pay [BitInstant], you have effectively paid the exchange."  *Id.* ¶ 18.  As to each named Plaintiff, the Complaint speaks of him or her providing funds for "transactions" for the purchase of Bitcoins.  *Id.* ¶¶ 11-13.

---

[3]     Also, even if BitInstant were deemed to "hold" "accounts," it cannot be said to do so for routine "personal, family, or household purposes."  Buying Bitcoins is not such a purpose.  *See, e.g., Electronic Fund Transfers*, 71 Fed. Reg. 51437, 51441 (Aug. 30, 2006) (explaining that specialized, single-purpose accounts such as those used for health care spending are not consumer accounts); Sec. & Exch. Comm'n, "Investor Alert: Ponzi Schemes Using Virtual Currencies" (Jul. 2013), *available at* http://www.sec.gov/investor/alerts/ia_virtualcurrencies.pdf (acknowledging the popularity of investments based on "Bitcoin arbitrage" by issuing an investor alert on the subject).

Indeed, inherent in the gravamen of the Complaint is an acknowledgement of the fact that

BitInstant holds no funds for customers.  The Complaint essentially asserts that BitInstant did not

work quickly enough to help its users get the Bitcoins they wanted.  In other words, the

Complaint's premise is that BitInstant did not help users move money to the exchange of their

choice fast enough.  The Complaint necessarily concedes that the business of BitInstant is to be

an intermediary for the transaction between the user and the exchange, not to "hold" money on

"account."[4]

### B.    BitInstant Conducted No "Transfers" of "Funds," Certainly Not to Plaintiffs

Under the EFTA, an "electronic funds transfer" means "any transfer of funds . . . which is

initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so

as to order, instruct, or authorize a financial institution to debit or credit an account."  15 U.S.C.

§ 1693a(7).  BitInstant users employ computers to access BitInstant's service.  Fine.  But

BitInstant does not "debit or credit an account."  *Id.*  Not only, as discussed above, is there no

account, but there is neither a debit nor a credit.  And the Complaint does not dispute this.

Plaintiffs' central claim is that BitInstant did not get them the Bitcoins they purchased fast

enough.  *See* Compl. ¶¶ 11-13, 25, 38.  But the movement of Bitcoins to Plaintiffs was a delivery

of what they paid for -- Bitcoins -- not a debit or credit to anything.[5]

Plaintiffs also seem to claim that, when they complained, BitInstant did not give them a

refund of transfer fees fast enough.  *Id.* ¶¶ 11-13, 25.  But a refund of transfer fees already paid is

---

[4]     Even though the Complaint contains a conclusory assertion that BitInstant holds
consumer accounts, Compl. ¶ 36, the Plaintiffs fail to make factual allegations supporting that
assertion, *id.* ¶¶ 11-13.

[5]     The Complaint concedes as much, among other places, in describing that "Mr. Iacoco
made a *purchase order* for $500 worth of bitcoin."  Compl. ¶ 11 (emphasis added).  He paid
BitInstant to deliver Bitcoins; he did not have an account to be debited or credited.  The same is
true of the other Plaintiffs.

not a user "transfer" of user funds either.  In the case of a refund, BitInstant has made a decision to pay *its own money* back to the user.  After all, it already collected the service fees from the user at the time of the user's payment.  *See, e.g.* Compl. ¶¶ 13 (explaining transaction as requiring customer to pay both the price of the Bitcoins and the fee associated at the same time).  BitInstant's decision to pay back the user for, say, technical problems, does not change the fact that the payment *is being made with BitInstant's own money* and thus is not a "transfer" of the user funds.  Quite simply, even assuming BitInstant was slow to provide Bitcoins to Plaintiffs, and even assuming BitInstant was slow to provide refunds, neither action was a "transfer" by BitInstant of customer electronic funds.

Furthermore, Bitcoins is not "funds" as the term is understood in its ordinary meaning.  *See United States v. Desposito*, 704 F.3d 221, 226 (2d Cir. 2013) (in construing a statute, all terms not defined by the statute are given their ordinary meaning).  The Merriam-Webster dictionary defines "funds" as, *inter alia*, "money on deposit on which checks or drafts can be drawn."  *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/funds (last visited October 3, 2013).  Black's Law Dictionary defines "money" as, *inter alia*, "[t]he medium of exchange authorized or adopted by a government as part of its currency."  Black's Law Dictionary (9th ed. 2009).  Bitcoins are not money, but rather, an electronic form of currency that is "not regulated by a central bank or any other form of governmental authority."  *SEC v. Shavers*, No. 4:13 CV 416, 2013 WL 4028182, at *1 (E.D. Tex. Aug. 6, 2013) (citation omitted).  And Bitcoins are not "on deposit on which checks or drafts can be drawn."

Because Plaintiffs have neither plausibly alleged that BitInstant is a "financial institution" whose activities fall within the scope of the EFTA, nor that the transactions in question are "transfers" of "funds" within the EFTA, their EFTA claim should be dismissed.  Because their

7

only federal claim fails, their state claims should be dismissed as well.  *See Oneida Indian Nation of N.Y.*, 665 F.3d at 437.

### III.    Plaintiffs Do Not Plausibly Allege State Law Claims

Although this Court should dismiss Plaintiffs' state law claims on jurisdictional grounds, Plaintiffs' state law claims also fail to state a claim upon which relief can be granted.

#### A.    Breach of Contract and Duty of Good Faith and Fair Dealing

To state a breach of contract claim under New York law, a plaintiff must plausibly allege (1) the terms of the agreement; (2) consideration; (3) performance by plaintiff; and (4) the basis of the defendant's alleged breach.  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Among other deficiencies, Plaintiffs fail to identify any agreement between them and BitInstant or the terms of any such agreement.  *See* Compl. ¶¶ 14-22.  Plaintiffs rely on marketing statements purportedly made on BitInstant's website, *see id.* ¶¶ 18-21, to assert that they "entered into one or more terms of service with BitInstant," *id.* ¶¶ 41-42, but "[s]tatements and practices that are mere puffery are not actionable."  *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011) (collecting cases), *aff'd*, 714 F.3d 739 (2d Cir. 2013).

#### B.    Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must plausibly allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  Plaintiffs fail to make plausible allegations as to any element of this claim, particularly that equity and good conscience require restitution.  Here, Plaintiffs allege that BitInstant was enriched when it "charged a premium to Plaintiffs for expedited services that it did not perform," and when it "failed to reimburse" Plaintiffs the money.  Compl. ¶ 48.

Nonetheless, Plaintiffs admit that BitInstant did, in fact, perform a service, yet Plaintiffs offer no estimation whatsoever about the actual costs of those performed services.  Instead, Plaintiffs base their claim on the allegation that "their funds [were] tied up for hours, days, or even weeks."  *Id.* ¶ 17.  Assuming *arguendo* that this statement is true, it is insufficient to demonstrate that BitInstant benefited economically during that time period or that equity and good conscience require restitution.  *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) (granting motion to dismiss because "even assuming *arguendo* that [the defendant] was enriched at plaintiffs' expense, plaintiffs have failed to demonstrate that equity and good conscience require restitution by [the defendant]"); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 359-60 (Bankr. S.D.N.Y. 2010) (granting motion to dismiss because the complaint did not "adequately explain factually how 'equity and good conscience militate against' allowing [d]efendants to retain such payments" (citation omitted)).

### C.    Negligence

Under New York law, a plaintiff asserting a negligence claim must plausibly allege that (1) defendant owed the plaintiff a duty of care, (2) defendant breached that duty, and (3) the breach was the proximate cause of the harm suffered by the plaintiff.  *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 298 (S.D.N.Y. 2012) (citing *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir.1997)).  Plaintiffs fail to identify any duty owed to them by BitInstant beyond any contractual obligations that purportedly existed between the parties.  *See Calcutti v. SBU., Inc.*, 223 F. Supp. 2d 517, 522 (S.D.N.Y. 2002) (where a negligence claim arises out of a contract claim, the negligence claim merges into the contract claim unless an independent duty exists outside of the contractual relationship).

## IV.     Granting Leave to Amend Would Be Futile

Plaintiffs should not be granted leave to amend their Complaint because amendment would be futile.  *See AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*, 897 F. Supp. 724, 726 (S.D.N.Y. 1995) (citing *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  Because BitInstant is not a financial institution within the meaning of the EFTA, Plaintiffs will never be able to salvage their attempt to maintain a federal action.  Even if the three named Plaintiffs can truthfully allege that their BitInstant transactions were for personal, family, or household purposes, they cannot plausibly make such allegations on behalf of all class members.  Indeed, several federal courts have denied class certification in Truth in Lending Act ("TILA") actions precisely because personal intent when entering a financial transaction is so specific to the individual borrower that individual questions of fact would necessarily dominate over common questions.  *See Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 381 (N.D. Ga. 1979) (denying class certification in TILA class action because "a finding of fact would be required for each alleged class member to decide if credit was extended 'primarily' for personal use or 'primarily' for business use"); *Seltzer v. Carte Blanche Corp.*, 76 F.R.D. 199, 203 (W.D. Pa. 1977) (denying class certification in TILA action against credit card issuer because "[w]hat would be required here is examination of and individual determinations regarding the separate conduct and intent of each otherwise implicated . . . cardholder").  The same would be true of Plaintiffs' EFTA claim in this case.  Plaintiffs should not be granted leave to amend their Complaint and engage in a fishing expedition through discovery to piece together a claim that is insufficient as a matter of law.  *See KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) ("allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6)"); *Ciriello v. Dep't of*

10

*Def.*, No. Civ. 3:01CV2149, 2001 WL 34312993, at *1 (D. Conn. 2001) (discovery is not intended as "fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it" (citing *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996))).

## <u>CONCLUSION</u>

Accordingly, this Court should dismiss the Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367(c)(3).

Dated: New York, New York.            Respectfully submitted,
      October 3, 2013

Perkins Coie LLP
30 Rockefeller Center, 22th Floor
New York, NY  10112-0085
212.262.6900

By:_____ /s/ Jalina J. Hudson_____
    Keith W. Miller
    Jalina J. Hudson
    Jean-Jacques Cabou (*Pro Hac Vice*)
*Attorneys for Defendant*
*BitInstant, LLC*