```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
LEANDRO IACONO, DEBORAH COLLINS, and              :
ULYSSES McGHEE, individually and on behalf of all others :
similarly situated,                               :        13 Civ. 4674 (CM)
                 Plaintiffs,                      :
          v.                                      :
                                                  :
BITINSTANT, LLC,                                  :
                 Defendant.                       :
--------------------------------------------------------------------------------x
```

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

 

Giskan Solotaroff Anderson & Stewart
Oren Giskan
Raymond Audain
11 Broadway
Suite 2150
New York, NY 10004

*Counsel for Plaintiffs and the Class*

October 17, 2013

**Table of Contents**

Table of Authorities ................................................................................................................. i

INTRODUCTION .......................................................................................................................1

FACTS ..........................................................................................................................................2

STANDARD..................................................................................................................................4

ARGUMENT................................................................................................................................4

    I.    Electronic Funds Transfer Act ...............................................................................4

    II.   Plaintiffs' EFTA Claims are Well Pleaded ............................................................5

    III.  Plaintiffs Duly Allege that BitInstant Breached their Contracts.........................8

    IV.  Plaintiffs Duly Allege that BitInstant was Unjustly Enriched at Their Expense............10

    V.   Plaintiffs Negligence Claims are Sound ...............................................................12

    VI.  Leave to Amend Would not be Futile...................................................................13

CONCLUSION..........................................................................................................................14

## Table of Authorities

**Federal Cases**                                                                                      **Page(s)**

*Allaire Corp. v. Okumus,*
    433 F.3d 248 (2d Cir. 2006)..................................................................................4

*Azose v. Wash. Mut. Bank,*
    588 F. Supp. 2d 366 (E.D.N.Y. 2008) ...................................................................4

*Bank of Am. v. City & County of S.F.,*
    309 F.3d 551 (9th Cir. 2002) ..................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................4

*Canon Cameras Litig.,*
    2006 U.S. Dist. LEXIS 62176 (S.D.N.Y. Sept. 1, 2006)................................11

*Citibank v. Walker,*
    12 A.D.3d 480 (2004) .........................................................................................10

*Clemmer v. Key Bank,*
    539 F.3d 349 (6th Cir. 2008) ................................................................................5

*Fink v. Time Warner Cable,*
    810 F. Supp. 2d 633 (S.D.N.Y. 2011)................................................................10

*Freudenberg v. E*Trade Fin. Corp.,*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)................................................................10

*FTC v. Johnson,*
    2013 U.S. Dist. LEXIS 28954 (D. Nev. Mar. 1, 2013).......................................8

*Harrison v. Enventure Capital Group,*
    166 F. Supp. 473 (W.D.N.Y. 1987) ...................................................................13

*JetBlue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..........................................................11, 12

*Kimmell v. Schaefer,*
    652 N.Y.S.2d 715 (1996)....................................................................................12

*Marvin v. Empire ATM,*
    2013 U.S. Dist. LEXIS 113734 (D.N.J. Aug. 13, 2013)....................................5

*Moody's Corp. Sec. Litig.*,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009)...............................................................................9

*Nagler v. Admiral Corp.*,
    248 F.2d 319 (2d Cir. 1957).............................................................................................13

*Peoples v. Sebring Capital Corp.*,
    2002 U.S. Dist. LEXIS 4104 (N.D. Ill. Mar. 13, 2002).....................................................7

*Puglisi v. Debt Recovery Solutions*,
    2010 U.S. Dist. LEXIS 6120 (E.D.N.Y. Jan. 26, 2010) ....................................................5

*Rule v. Brine*,
    85 F.3d 1002 (2d Cir. 1996)............................................................................................10

*Schulken v. Wash. Mut. Bank*,
    2012 U.S. Dist. LEXIS 2005 (N.D. Ca. Jan. 5 2012) .................................................7, 13

*Stern v. Gen. Elec. Co.*,
    924 F.2d 472 (2d Cir. 1991)............................................................................................13

*Suez Equity Investors v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2000)..............................................................................................13

*Wells Fargo Bank Northwest v. Taca Int'l Airlines*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002).............................................................................13

### State Cases

*Wiener v. Lazard Freres & Co.*,
    672 N.Y.S.2d 8 (1st Dep't 1998)......................................................................................11

*Yuzwak v. Dygert*,
    534 N.Y.S.2d 35 (4th Dep't 1988)...................................................................................10

### Statutes

*15 U.S.C. Sec. 1601, et seq.* ........................................................................................4, 7

*15 U.S.C. Sec. 1693, et seq.* ....................................................................................1, 4, 5

### Other Authorities

*71 Fed. Reg. 51437* .............................................................................................................8

Plaintiffs Leandro Iacono, Deborah Collins, and Ulysses McGhee, individually and on behalf of all others similarly situated, respond in opposition to Defendant BitInstant, LLC's motion to dismiss their Complaint. For the reasons set forth below, BitInstant's motion should be denied.

## INTRODUCTION

Plaintiffs have brought this class action against BitInstant because BitInstant misrepresented the speed of its services and charged inflated fees for those deficient services that it failed to refund. BitInstant purported to provide a means to rapidly pay funds to bitcoin[1] exchanges far faster than other bitcoin processing services. (Compl. ¶ 2.) BitInstant also promised to refund its fees to customers who experienced undue delays in the processing of their transactions. (Compl. ¶ 3.) BitInstant did neither.

BitInstant now argues that this case should be dismissed because it does not fall within the purview of the Electronic Funds Transfer Act, 15 U.S.C. Sec. 1693, *et seq.* ("EFTA").[2] BitInstant argues that it is not a financial institution for purposes of the EFTA because it holds no funds or assets in any customer account. However, Plaintiffs duly allege that BitInstant maintains numerous consumer accounts and routinely sets them up for electronic funds transfers. (Compl. ¶¶ 10, 16, 36, 39.) BitInstant's website also alluded to consumer accounts, as does its services agreement. Furthermore, whether BitInstant holds funds or assets in consumer accounts as required by the EFTA is a question of fact that is not susceptible to a motion on the pleadings.

---

[1] Bitcoin is an encrypted, virtual currency invented in 2009. (Compl. ¶ 14.) Bitcoins have value; they can be exchanged for other forms of currency, including dollars. (Id.) As of April 2013, the cumulative value of all bitcoins in circulation was reported to be as high as $1.5 billion. (Id.)

[2] In so doing, BitInstant improperly relies on matters outside of the pleadings to support its motion, including contentions that fall outside the scope of matters that may be properly considered under Fed. R. Civ. P. 12(b)(6). The motion should be denied on that basis alone.

BitInstant also argues that it conducted no transfers of funds.  Here too, whether BitInstant conducted a transfer of funds is not susceptible to a motion on the pleadings.  Furthermore, Plaintiffs certainly allege that BitInstant transferred their funds to bitcoin dealers to purchase bitcoin on Plaintiffs' and the putative class's behalf.  (Compl. ¶¶ 2, 4, 10, 15.)  Emails from BitInstant to its customers also convey that BitInstant transferred money.  BitInstant also seeks dismissal of Plaintiffs' state law claims.  But, as demonstrated below, BitInstant breached its agreements with its customers, was unjustly enriched when it collected premium fees for worthless or discounted services, and falsely represented that it had specialized insider knowledge that would enable it to negotiate an opaque market.  As such, Plaintiffs' breach of contract claims, unjust enrichment claims, and negligence claims are sound.

In the end, BitInstant cashed-in on the public's interest in bitcoins by making false promises and extending specious refund guarantees.  Then, when the company's credibility was exhausted and its customers demanded that it make good on its contractual obligations, BitInstant all but disappeared.[3]  In so doing, BitInstant broke the law.

## FACTS

BitInstant owns and operated a website that provided a platform for bitcoin transfers. (Compl. ¶ 10.)  BitInstant is a payment processor that permits its users to deposit dollars and, for a fee, buy bitcoins from third parties known as bitcoin exchanges.  (Compl. ¶¶ 15-16.)  BitInstant does not sell Bitcoins; instead, Bitinstant is a payment processor that purports to assist exchanges

---

[3]     As of this writing, and for months now, BitInstant has suspended its website, www.bitinstant.com.

2

in receiving payments from customers. (See Decl. of R. Audain ("Audain Decl.") Ex. A).[4] As a payment processor, BitInstant maintains numerous accounts belonging to consumers and routinely sets them up for electronic transfers. (Compl. ¶ 10.) BitInstant permits its users to deposit dollars and, for a fee, buy bitcoins from exchanges. (Compl. ¶ 16.) When BitInstant's website was operational, it made statements like "Make cash deposit at any major bank and receive your coins within an hour or two" and "You can have bitcoins 30 minutes from now." (Compl. ¶ 18; see also Audain Decl. Ex. A and B at Plaintiffs 000003.) Those statements reflected BitInstant's understanding that, when it comes to buying bitcoins, time is of the essence. (Compl. ¶ 19.) BitInstant purported to offer an expeditious alternative to other, slower payment processors. (Compl. ¶¶ 19, 20.) BitInstant charged its customers a premium for its supposedly expeditious service. (Compl. ¶ 20.) Bitcoin's value fluctuates quickly and dramatically (Compl. ¶ 14), so consumers were willing to pay BitInstant a premium for the fast transaction speed it purported to provide (Compl. ¶ 17). BitInstant also made a specious refund guarantee: "If we screw up and fail to deliver on time, we will always investigate and we will always refund our fees." (Compl. ¶ 21; see also Audain Decl. Ex. C.)

But BitInstant has repeatedly failed to deliver on its promise, and consumers who have paid BitInstant's premium fees have had their funds tied up for hours, days, or even weeks. (Compl. ¶ 17; see also Compl. ¶¶ 18-21; 23-14.) Plaintiff Iacono, for instance, chose to buy bitcoins through BitInstant instead of using less expensive payment processors. (Compl. ¶ 11.) He made a purchase order that Bitinstant did not execute for five hours, which caused Plaintiff Iacono to lose approximately $120. (Compl. ¶ 11.) Plaintiff Iacono's efforts to receive a refund

---

[4] See Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) ("In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing suit.").

from BitInstant were fruitless. (Compl. ¶ 11.) Plaintiff Collins sent $303.95 to BitInstant, which entitled her to $288.03 worth of bitcoins. (Compl. ¶ 12.) BitInstant took eight hours to process her transaction. (Compl. ¶ 12.) By then, the price of bitcoins had increased from $85 to $131 each. (Compl. ¶ 12.) Like Plaintiff Iacono, Plaintiff Collins' efforts to receive a refund from BitInstant were fruitless. (Compl. ¶ 12.) Plaintiff McGhee also relied upon BitInstant's misleading claims about the speed of its transactions and its refund policy. (Compl. ¶ 13.) He ordered $30 worth of bitcoins through BitInstant on April 8, 2013. (Compl. ¶ 13.) BitInstant did not process Plaintiff McGhee's order until April 16, 2012. (Compl. ¶ 13.) Plaintiff McGhee registered several complaints with BitInstant about the delay, prompting hollow assurances from BitInstant that it would address his situation. (Compl. ¶ 13.) BitInstant never refunded Plaintiff McGhee's fee. (Compl. ¶ 13.) These experiences are typical. (See Compl. ¶¶ 23-24.)

## STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court "must accept as true all well-pleaded factual allegations in the complaint, and draw[ ] all inferences in plaintiff's favor." Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).

## ARGUMENT

### I.     Electronic Funds Transfer Act

"The EFTA was enacted as part of the comprehensive Consumer Credit Protection Act, Pub. L. No. 95-630 Sec. 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. Sec. 1601 et seq.). Its purpose was to protect consumers by providing a 'basic framework establishing the rights, liabilities, and responsibilities of participants in electronic transfer systems.'" Azose v. Wash. Mut. Bank, 588 F. Supp. 2d 366, at 370 (E.D.N.Y. 2008) (citing 15 U.S.C. Sec. 1693(b)).

"The EFTA's 'primary objective . . . is the provision of individual consumer rights." Bank of Am. v. City & County of S.F., 309 F.3d 551, 564 (9th Cir. 2002). "The language of the EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability." Id.; see also Marvin v. Empire ATM, 2013 U.S. Dist. LEXIS 113734, at *4 (D.N.J. Aug. 13, 2013) (the EFTA "protects consumer rights by providing a 'framework establishing rights, responsibilities or participants in electronic fund and remittance transfer systems'") (citing 13 U.S.C. Sec. 1693(b)). "Because the EFTA is a remedial statute, it is accorded 'a broad, liberal construction in favor of the consumer.'" Clemmer v. Key Bank, 539 F.3d 349, 353 (6th Cir. 2008) (quoting Begala v. PNC Bank, 163 F.3d 948, 950 (6th Cir. 1998)).

## II.     Plaintiffs' EFTA Claims are Well Pleaded

Defendant's argument that BitInstant is not a "financial institution" subject to the EFTA is misplaced and premature. "A 'financial institution' under the EFTA is a bank, savings association, credit union, *or any other person that directly or indirectly holds an account belonging to a consumer.*" Puglisi v. Debt Recovery Solutions, 2010 U.S. Dist. LEXIS 6120, at *17 (E.D.N.Y. Jan. 26, 2010) (emphasis added). Plaintiffs duly allege that BitInstant is a financial institution because it holds accounts belonging to consumers. Specifically, Plaintiffs allege that BitInstant, as a payment processor that coordinates transactions between bitcoin sellers and bitcoin buyers (Compl. ¶¶ 15-16), maintains numerous accounts belonging to consumers and routinely sets them up for electronic funds transfers (Compl. ¶ 10; see also Compl. ¶¶ 36, 39). Plaintiffs also allege that "BitInstant permits its users to deposit dollars . . . pursuant to services agreements that encompass the deposit, retention, safekeeping, and withdrawal of customers' deposits." (Compl. ¶ 16.)

5

BitInstant's website, when it was operational, also made reference to consumer accounts. BitInstant spoke of crediting customers' funds to their "exchange accounts." (See Audain Decl. Ex. D.) It also alluded to "deposit slips" and explained what happened after customers "deposited" their cash. (Id.) BitInstant's Services Agreement – which was in effect as of June 2013 – also alludes to customer accounts when it states that the funds of customers who "make a payment to BitInstant . . . are settled by BitInstant to the Merchant that you [the customer] designate[s] as the recipient of the funds on the Site." (BitInstant Customer Terms of Use and Privacy Policy ("Services Agreement"), Audain Decl. Ex. E, at PLAINTIFFS 000007.) BitInstant's Services Agreement also indicates that BitInstant holds customers' money for a period; it warns that "[u]pon the seizure, for any reason, of the assets of BitInstant or the bankruptcy of BitInstant, the Transaction Balance may be lost." (Id. at 10.) Plaintiffs expect discovery to reveal that their deposits went into discrete BitInstant accounts, or accounts that BitInstant controlled, before BitInstant debited that account when it transferred consumers' money to a bitcoin dealer.

BitInstant's other attempts to escape from the requirements of the EFTA are similarly misplaced. Bitinstant claims that it does not hold consumer assets. Whether BitInstant holds consumer assets is a question of fact that is not susceptible to a motion on the pleadings. Plaintiffs certainly allege that BitInstant held their money[5] pending BitInstant's purchase of bitcoins on their behalf. (Compl. ¶¶ 11-13, 16.).[6] BitInstant also represented that it "receives

---

[5]   The Court need not decide at this juncture whether bitcoins qualify as funds. Plaintiffs allege that BitInstant held their money. (Compl. ¶¶ 11-13.)

[6]   BitInstant's efforts to explain the character of the transfer fees it failed to refund to aggrieved customers is similarly improper at this juncture because it is a fact sensitive question that is not susceptible to a motion on the pleadings.

money for exchanges." (Audain Decl. Ex. E, at PLAINTIFFS 000022.) It stands to reason that BitInstant exercised control over that money pending BitInstant's transfer of that money to bitcoin exchanges.

Bitinstant also argues that it conducted no transfers of funds. However, BitInstant's transfer confirmation email to Plaintiff Iacono, for instance, referred to his "recent transfer" and to a "DestAccount," which Plaintiffs understand to be an abbreviation of "destination account." (Audain Decl. Ex. F.)

BitInstant also argues that this class action is unviable because Plaintiffs cannot show that putative class members used their accounts for routine "personal, family, or household purposes." First, this argument is premature and should be considered at the class certification stage. Second, Courts have held in the context of Truth in Lending Act, 15 U.S.C. Sec. 1601, *et seq.* ("TILA"), class actions that this inquiry should not preclude a class action. See, e.g., Schulken v. Wash. Mut. Bank, 2012 U.S. Dist. LEXIS 2005, at *34-35 (N.D. Cal. Jan. 5, 2012) (rejecting argument that any inquiry into purpose of lines of credit renders TILA class action unsustainable because that "line of reasoning would potentially create an end run around TILA class actions") (citing Peoples v. Sebring Capital Corp., 2002 U.S. Dist. LEXIS 4104, at *24-25 (N.D. Ill. Mar. 13, 2002) (citing cases)).[7] The cases upon which Defendant relies date back to the 1970s, were decided at the class certification stage, and do not bar class actions under the

---

[7] See Clemmer v. Key Bank N.A., 539 F.3d 349, 353 (6th Cir. 2008) ("With the common purpose of each statute [EFTA and TILA] to protect consumers with respect to financial credit, courts draw upon case law interpreting one statute for persuasive authority for another statute."); Johnson v. W. Suburban Bank, 225 F.3d 366, 379 (3d Cir. 2000) (class-action provisions of TILA and EFTA have the same meaning).

circumstances at bar.  Plaintiffs are all individuals and, to the extent that there is any issue, the class could be limited to individuals.

Defendant's also cite to 71 Fed. Reg. 51437, 51441 (Aug. 30, 2006) for their proposition that any account attributable to BitInstant would be a "single-purpose" account that the EFTA does not reach.  That citation is disingenuous.  71 Fed. Reg. 51437, 51441 deals with the narrow and inapposite issue of card accounts, such as gift cards or other stored-value or prepaid cards.

The court in FTC v. Johnson deemed that a payment processor similar to BitInstant was susceptible to suit under the EFTA.  2013 U.S. Dist. LEXIS 28954 (D. Nev. Mar. 1, 2013).  The company at issue in FTC, Elite Debit, processed checks for online transactions.  Id., at *13-14.  Consumers gave their banking information to Elite Debit and Elite Debit converted the information into an electronic check that it would present to a bank.  Id., at *14.  As is the case in this lawsuit, the funds were deposited into the account of the merchant, and Elite Debit would debit its processing fee from the merchants' accounts per an agreement signed with the merchant.  Id.  The FTC court found this evidence sufficient to raise genuine issues of fact about Elite Debit's liability under the EFTA.  Id., at *20.  Here, as well, the pleadings are sufficient to raise genuine issues of fact as to BitInstant's liability under the EFTA.

### III.     Plaintiffs Duly Allege that BitInstant Breached their Contracts

Defendants incorrectly argue that Plaintiffs fail to identify any agreement between them and BitInstant.  Plaintiffs allege that BitInstant agreed to comply with their instructions concerning the transfer and disposition of their monies within a certain period, and agreed to refund fees in situations where BitInstant was responsible for any delay in transferring and disposing of said monies within the time limit.  (Compl. ¶ 41.)  Plaintiffs allege that BitInstant violated those agreements by failing to process Plaintiffs' and class members' transactions within

the designated amount of time (Compl. ¶ 44) and failing to refund fees to Plaintiffs and class members (Compl. ¶ 45). BitInstant's statements through its website (see Compl. Pars. 18-21, 25), either alone or in combination, should be construed as an offer by BitInstant to provide the services advertised, and the terms of its agreement with Plaintiffs and the putative class were definite enough to constitute an enforceable promise.

Furthermore, Plaintiffs and the putative class members entered into a Services Agreement with BitInstant when they opened accounts. The Services Agreement "set out the terms of a legal agreement between you and BitInstant." (Audain Decl, Ex. E, at PLAINTIFFS 000007.) The Services Agreement also states that "it is a legally binding document on you and BitInstant." (Id.; see also id. ("These terms of use . . . are an important legal agreement between you . . . and BitInstant, LLC . . . ."); id. ("Please read this Agreement carefully, as it is a legally binding document on you and BitInstant.")). The Services Agreement states that when a customer makes a payment to BitInstant, the customer's funds "are settled by BitInstant to the Merchant that you designated as the recipient of funds." (Id.) Although the Services Agreement does not specify the amount of time it will take BitInstant to "settle" those funds, the Services Agreement incorporates by reference the promises BitInstant makes on its website. (Id. ("These terms of use or Agreement covers your use of www.bitinstant.com . . . and the services offered through the Site . . . ."))

Defendants argue that Plaintiffs' contract claims are unsustainable because the statements in question are "mere puffery." Although "puffery" is not generally recognized as a defense to a valid contract, BitInstant's statements are not mere puffery because they are verifiable and measurable. See In re Moody's Corp. Sec. Litig., 599 F. Supp. 2d 493, 509 (S.D.N.Y. 2009) (statements that were "neither 'vague' nor 'non-specific' pronouncements that were incapable of

9

'objective verification'" did not "constitute inactionable puffery"). Plaintiffs' detail concrete misrepresentations that rise beyond the level of puffery and constitute false statements of fact made for the purpose of inducing Plaintiffs to use BitInstant's services. See Freudenberg v. E*Trade Fin. Corp., 712 F. Supp. 2d 171, 190 (S.D.N.Y. May 11, 2010) ("[S]tatement can be actionable, where, as here, the statements are belied by conditions internally known by defendants."); cf. Yuzwak v. Dygert, 534 N.Y.S.2d 35, 36 (4th Dep't 1988) (when a statement is not obviously puffing, the question of whether it is fact or opinion is "almost always a question of fact for a jury's resolution").

As such, the statements at issue in this case are distinguishable from the ones at issue in Fink v. Time Warner Cable because they are not "generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011). BitInstant specifically represented that Plaintiffs and class members would receive their coins "within an hour or two" (Compl. ¶ 18a); that Plaintiffs and class members could "have bitcoins in minutes" (Compl. ¶ 18b); could "have bitcoins 30 minutes from now" (Compl. ¶ 18d); and that, should they "screw up and fail to deliver on time, we will always investigate and we will always refund our fees" (Compl. ¶ 21). These are concrete statements that a reasonable consumer would interpret as a factual claim upon which she could rely.

### IV.    Plaintiffs Duly Allege that BitInstant was Unjustly Enriched at Their Expense

Plaintiffs duly allege that BitInstant was unjustly enriched at their expense. To prevail on a claim of unjust enrichment "a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." Citibank v. Walker, 12 A.D.3d 480, 481 (2004); see

10

also Rule v. Brine, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Where the complaint asserts claims on theories of both contract and quantum meruit and there is a genuine dispute as to the existence of contract, the plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted to the jury on both theories.").

Plaintiffs and the putative class allege that BitInstant was unjustly enriched when it charged a premium for expedited services that it did not perform and when it failed to reimburse the fees they paid for those expedited services. (Compl. ¶ 48.) Defendant argues that the fact that BitInstant performed any kind of service at all precludes the unjust enrichment claim since Plaintiffs "offer no estimation whatsoever about the actual costs of those performed services." Defendants' position is unavailing. First, BitInstant's delays cost certain customers money when the cost of bitcoin increased while their transfers were pending. In those instances, BitInstant's services were worthless. Second, Plaintiffs duly allege that they received less than what they bargained for when they paid a premium price for expedited services as a result of BitInstant's deceptive representations. See In re Canon Cameras Litig., 2006 U.S. Dist. LEXIS 62176, at *9 (S.D.N.Y. Sept. 1, 2006) ("[T]o prevail on their unjust enrichment claims, plaintiffs will have to establish that the benefits they received were less than what these purchasers bargained for."). Plaintiffs expect to demonstrate that BitInstant charged a premium by comparing BitInstant's fees against those of BitInstant's competitors. As such, Plaintiffs will be able to prove the extent to which BitInstant was unjustly enriched and the amount of restitution to which they and the putative class would be entitled. See e.g., Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 13 (1st Dep't 1998) (unjust enrichment claim sound because plaintiffs claim that they paid fee and defendants did not fulfill the terms of the agreement).

Defendant's reliance on In re JetBlue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299 (E.D.N.Y. 2005), is unavailing.  In In re JetBlue plaintiffs alleged that JetBlue violated their privacy rights by transmitting their personal information, id. at 303, and alleged unjust enrichment because JetBlue received of remuneration for the information, id. at 329.  The In re JetBlue court dismissed the unjust enrichment claim because JetBlue disclosed the information for free.  Id.  Here, by contrast, Plaintiffs and the putative class paid BitInstant for services that BitInstant did not provide.[8]

## V.      Plaintiffs Negligence Claims are Sound

Plaintiffs' and the putative class's negligence claims arise from duties owed to them by BitInstant beyond their contractual obligations.  BitInstant possessed specialized expertise, knowledge, and experience concerning their ability to purchase bitcoins on Plaintiffs' behalf.  Because BitInstant was far more knowledgeable about the bitcoin business, and particularly about the vagaries of purchasing bitcoins from third parties, Plaintiffs and the class were entitled to rely on BitInstant's representations in this regard.  BitInstant demonstrated that expertise when it claimed that it could procure bitcoins within minutes, far faster than their competitors.  (See Audain Decl. Ex. C ("We provide a means to rapidly pay funds to bitcoin exchanges far faster than the usual methods by automating the entire process."; see also id. ("Our service aims to make most deposits happen instantly – within a matter of seconds in ideal cases . . . .").)  Given the haziness of the bitcoin markets and the obscurity of its participants, this constitutes the type

---

[8]      Defendant also cites to In Re Hydrogen, where the bankruptcy court dismissed the claim because the allegations of unjust enrichment were inadequately vague.  431 B.R. 337, 359 (Banker. S.D.N.Y. 2010).  Here, by contrast, Plaintiffs and the putative class make specific, actionable claims that they paid BitInstant elevated fees for expedited services that they did not receive, and that equity and good conscience militate against permitting BitInstant to retain those fees.  (Compl. ¶¶ 48-50.)

of specialized knowledge required to impose a duty of care in the commercial context.  See Kimmell v. Schaefer, 652 N.Y.S.2d 715 (1996) (distinguishing between "casual statements and contacts" and "deliberate representations" that give rise to a duty to speak with care).  Furthermore, whether a special relationship existed between BitInstant and the Plaintiffs' and the putative class is a question of fact.  See, e.g., Suez Equity Investors v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2000);  Wells Fargo Bank Northwest v. Taca Int'l Airlines, 247 F. Supp. 2d 352, 366 (S.D.N.Y. 2002).

## VI.     Leave to Amend Would not be Futile

"Outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts."  Harrison v. Enventure Capital Group, 166 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting Nagler v. Admiral Corp., 248 F.2d 319, 322 (2d Cir. 1957)).  For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead."  Stern v. Gen. Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991).  Should the Court find any of Plaintiffs' and the putative class's allegations deficient, Plaintiffs and the putative class respectfully request an opportunity to amend their Complaint.

Defendants argue that leave to amend would be futile because Plaintiffs and the putative class cannot allege on a class-wide basis that their BitInstant accounts were for personal, family, or household purposes.  As demonstrated above, courts have rejected the argument that any inquiry into the nature of a transaction undermines the viability of a class action.  See Schulken, 2012 U.S. Dist. LEXIS 2005, at *34-35.  Furthermore, Plaintiffs are prepared to modify the class definition to encompass only individuals.

## **CONCLUSION**

For all of the reasons set forth herein, BitInstant's motion to dismiss should be denied in its entirety.

Dated: October 17, 2013

                                                     /s/ Raymond Audain
Oren Giskan
Raymond Audain
Giskan Solotaroff Anderson & Stewart LLP
11 Broadway, Suite 2150
New York, NY 10004

*Counsel for Plaintiffs and the Class*