UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

LEANDRO IACONO, DEBORAH COLLINS, and ULYSSES McGHEE, individually and on behalf of all others similarly situated, :

Plaintiffs, : No. 13-cv-04674-CM

-against- :

BITINSTANT, LLC, :

Defendant.

-------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BITINSTANT, LLC'S MOTION TO DISMISS THE COMPLAINT**

PERKINS COIE LLP
Keith W. Miller
Jalina J. Hudson
Jean-Jacques Cabou (*Pro Hac Vice*)
30 Rockefeller Center
New York, New York 10112
*Attorneys for BitInstant, LLC*

October 24, 2013

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 2
I. BitInstant Is Not a "Financial Institution" Subject to the EFTA ..... 2
A. BitInstant Does Not Hold "Accounts" Established for "Personal, Family, or Household Purposes" ..... 2
II. BitInstant Does Not "Hold" Consumer Assets or Conduct "Transfers" of "Funds" Within the Meaning of the EFTA ..... 5
A. BitInstant Does Not "Hold" Consumer Assets ..... 6
B. BitInstant Does Not Conduct "Transfers" of "Funds" ..... 6
III. Plaintiffs Do Not Plausibly Allege State Law Claims ..... 7
A. Breach of Contract and Duty of Good Faith and Fair Dealing ..... 7
B. Unjust Enrichment ..... 9
C. Negligence ..... 9
IV. Granting Leave to Amend Would Be Futile ..... 9
CONCLUSION ..... 10



LEGAL28208702.1

# TABLE OF AUTHORITIES

**Page**

## CASES

*AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*,
897 F. Supp. 724 (S.D.N.Y. 1995) ....................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 6

*Calcutti v. SBU., Inc.*,
223 F. Supp. 2d 517 (S.D.N.Y. 2002)....................9

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006)....................3

*Fink v. Time Warner Cable*,
810 F. Supp. 2d 633 (S.D.N.Y. 2011), *aff'd*, 714 F.3d 739 (2d Cir. 2013)....................8

*Fink v. Time Warner Cable*,
No. 08 Civ. 9628, 2009 WL 2207920 (S.D.N.Y. July 23, 2009) ....................3

*Friedl v. City of New York*,
210 F.3d 79 (2d Cir. 2000)....................2

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996)....................7

*In re Moody's Corp. Sec. Litig.*,
599 F. Supp. 2d 493 (S.D.N.Y. 2009)....................8

*In re Tower Auto. Sec. Litig.*,
483 F. Supp. 2d 327 (S.D.N.Y. 2007)....................9

*KBL Corp. v. Arnouts*,
646 F. Supp. 2d 335 (S.D.N.Y. 2009)....................10

*Kimmell v. Schaefer*,
652 N.Y.S.2d 715 (1996)....................9

*Mangiafico v. Blumenthal*,
471 F.3d 391 (2d Cir. 2006)....................3

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)....................2, 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

15 U.S.C. § 1693, *et seq.*....................1

15 U.S.C. § 1693a(2)....................5

15 U.S.C. § 1693a(7)....................7

15 U.S.C. § 1693a(9)....................2

28 U.S.C. § 1367(c)(3)....................10

### OTHER AUTHORITIES

12 C.F.R. pt. 1005....................5

Fed. R. Civ. P. 12(b)(1)....................5

Fed. R. Civ. P. 12(b)(6)....................10

Defendant BitInstant, LLC ("BitInstant") by and through its counsel, Perkins Coie LLP, respectfully submits this reply memorandum of law in further support of its Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

For the reasons stated in BitInstant's Motion to Dismiss and as further explained herein, Plaintiffs' Complaint should be dismissed in its entirety with prejudice. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Opposition" or "Opp'n") does not provide a substantive response to BitInstant's arguments. Instead, Plainitffs' Opposition cursorily asserts that BitInstant is a "financial institution" within the meaning of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, that held "accounts." *See* Opp'n at 5-8. But, as explained further herein, Plaintiffs' conclusory assertions are belied by the same extrinsic evidence that they have now submitted to support their claims. *See* Decl. of Raymond Audain in Opp'n to Def. BitInstant's Motion to Dismiss ("Audain Declaration"). Simply put, instead of addressing the legal arguments contained in BitInstant's Motion to Dismiss, Plaintiffs attempt to disguise their deficiencies by attaching irrelevant snapshots of BitInstant's website, which are not properly before the Court, and helplessly arguing that these documents somehow prove that BitInstant was a financial institutions that held accounts. Nothing could be further from true. Because these documents were not attached to, incorporated in, or integral to the Complaint, they are improper extrinsic evidence, and therefore should not be considered by the Court. Furthermore, even if the Court could properly consider these exhibits, they only contradict the Plaintiffs' allegations. To the extent these exhibits contradict the Complaint, the Court need not take Plaintiffs' allegations as true for purposes of evaluating a motion to dismiss.

Based on the foregoing deficiencies and the futility of a potential amendment, the Court should dismiss the Complaint in its entirety with prejudice.

## ARGUMENT

### I. BitInstant Is Not a "Financial Institution" Subject to the EFTA

Plaintiffs' Opposition does not dispute that BitInstant is not a bank, savings and loan association, or credit union. *See* Opp'n at 5-8. Rather, Plaintiffs argue that BitInstant is a "financial institution" because it "holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). Plaintiffs cite to paragraphs 10, 15-16, 36, and 39 of their Complaint to support their contention. As explained below, these paragraphs are insufficient to state a plausible claim because they are naked assertions unsupported by factual allegations or contradicted by the extrinsic evidence that they ask the Court to consider. In fact, the Complaint lacks plausible allegations that BitInstant held "accounts" as the term is defined in the EFTA, and is thus a "financial institution" subject to the EFTA.

#### A. BitInstant Does Not Hold "Accounts" Established for "Personal, Family, or Household Purposes"

In evaluating a motion to dismiss, a court looks only to the allegations on the face of the complaint, and if matters outside of the pleadings are presented, the court may only consider documents attached to the complaint, incorporated in it by reference, or integral to it. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("when matters outside the pleadings are presented in a response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment" (citation and internal quotation marks omitted)). Where a complaint does not incorporate by reference a document but heavily relies on its terms and effects, such a document may be deemed integral to the complaint.

*See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). Even in those circumstances, however, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" before a court may consider the document in evaluating a motion to dismiss. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, Plaintiffs' offer of extrinsic evidence is both barred as a procedural matter and wholly unavailing in substance. Exhibits A-E are snapshots of BitInstant's website, which is no longer operational. Exhibit F is an email from a BitInstant customer service employee to one of the named Plaintiffs. These exhibits were not attached to, incorporated in, or integral to the Complaint.[1] Moreover, their authenticity is not apparent on their face or anywhere else in the record. Therefore, it is improper for the Court to consider this extrinsic evidence at this stage of the proceedings.[2]

Even assuming these documents can be properly considered by the Court, their substance only contradicts Plaintiffs' allegations concerning whether BitInstant held "accounts." And "when documents contain statements that contradict the allegations in the complaint, the documents control and the court need not accept as true allegations contained in the complaint."

---

[1] With regard to Exhibit E, which purportedly shows BitInstant's terms of use, paragraph 41 of the Complaint makes a vague reference to "one or more terms of service" but does not identify the specific terms in Exhibit E or refer to the terms and effects shown in Exhibit E. Moreover, Exhibit E is dated June 3, 2013, yet the alleged breaches occurred in April 2013. *See* Compl. ¶¶ 11-13. A court should disregard extrinsic documents where the "Complaint does not refer specifically to any of the documents, and acceptance of the documents as comprising the contract would require the Court to accept as true [a party's] testimonial proffers as to the timing of the parties' agreement and the relationship among and accessibility to Plaintiff[s] of the various documents" being offered. *Fink v. Time Warner Cable*, No. 08 Civ. 9628, 2009 WL 2207920 (S.D.N.Y. July 23, 2009).

[2] In addition to being plainly outside of the Complaint, these documents do not show who accessed the webpages at issue, let alone who relied on and agreed to the statements therein. No information, either in the Complaint or in the late-submitted materials, shows that Plaintiffs, or members of the putative class, relied on or even saw this information.

*Roth*, 489 F.3d at 510. For example, Plaintiffs argue that BitInstant's use of the words "exchange account" on its website, as shown in Exhibit D, supports their allegation that "BitInstant maintains numerous accounts." *See* Opp'n at 6; Compl. ¶ 10. Properly read, however, Exhibit D, defines "exchange account" as the customer's account ***maintained by the bitcoins exchange*** (Mt. Gox, Crypto X Change) and ***not*** by BitInstant. Similarly, and wrongly, Plaintiffs argue that the phrase "deposit slip" on Exhibit D supports their allegation that "BitInstant permits its users to deposit dollars." *See* Opp'n at 6; Compl. ¶ 16. Exhibit D shows that the phrase "deposit slip" -- which is shown in quotation marks -- is nothing more than a receipt customers can take to locations such as Walmart and 7-Eleven to transfer their cash to the bitcoins exchanges. Nowhere does the exhibit show that BitInstant held these "deposits."[3]

Plaintiffs also claim that Exhibit E "alludes to customer accounts." *See* Opp'n at 6. First, Plaintiffs cannot defeat a motion to dismiss by resting on what some extrinsic document "alludes to." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (requiring "well-pleaded facts" that permit the court to "infer more than the mere possibility of misconduct"). Second, the language upon which Plaintiffs rely only contradicts their allegation that BitInstant, rather than the exchanges, held customer accounts: "When you make a payment to BitInstant through the Services, your funds are settled by BitInstant ***to the Merchant that you designate as the recipient of the funds*** on the Site." Ex. E (emphasis added). Put differently, the language makes clear that funds paid to BitInstant are not held by BitInstant, but rather sent by BitInstant to the Merchant (the bitcoins exchange) designated by the BitInstant user. Exhibit E also makes clear that the BitInstant terms of use apply to "customers wishing to make a payment ***to a merchant***." *Id.* (emphasis added).

[3] Furthermore, nowhere do Plaintiffs even try to argue that these "deposits" meet the definition of "demand deposit" under the EFTA, nor do they explain how the "deposit" of cash would *ipso facto* establish that BitInstant holds "accounts" within the meaning of the EFTA.

Nowhere does Exhibit E (or any other document) show that BitInstant users have funds held in "accounts" by BitInstant. Accordingly, the Court is not obliged to take as true Plaintiffs' allegations that BitInstant held "accounts" on behalf of consumers. Just because Plaintiffs say so, does not mean that the Court needs to accept it.

Having failed to plausibly allege that BitInstant held any deposits or consumer assets, Plaintiffs also fail to make any allegation whatsoever that such "accounts" were "established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2); 12 C.F.R. pt. 1005. In yet another attempt to end-run this Court's jurisdictional limits and the requirements of the Federal Rules of Civil Procedure, Plaintiffs argue that consideration of these purposes is "premature and should be considered at the class certification stage." Opp'n at 7. Wrong. Whether BitInstant held "accounts" as the term is defined in the statute, which in turn determines whether BitInstant is a "financial institution," is a determination necessary to establish this Court's jurisdiction over Plaintiffs' Complaint. Without jurisdiction, there should be no "class certification stage" or any other stage. *See* Fed. R. Civ. P. 12(b)(1). Because the Complaint fails to even attempt to plausibly allege that any "accounts" were "established for personal, family, or household purposes," it fails to satisfy a necessary precondition for this Court to exercise jurisdiction.

## II. BitInstant Does Not "Hold" Consumer Assets or Conduct "Transfers" of "Funds" Within the Meaning of the EFTA

In addition to failing to plausibly allege that BitInstant held "accounts" for the purposes encompassed within the EFTA, Plaintiffs also fail to plausibly allege that BitInstant's activities fall within the scope of the EFTA.

**A. BitInstant Does Not "Hold" Consumer Assets**

Plaintiffs argue that paragraphs 11-13 and 16 of their Complaint contain allegations that BitInstant held consumer assets. Opp'n at 6. Paragraphs 11-13 contain no such allegation, and paragraph 16 merely states, in a conclusory fashion with no citation or support, that consumers deposited dollars pursuant to agreements that "encompass the deposit, retention, safekeeping, and withdrawal of customers' deposits." In their Opposition (not in their Complaint), Plaintiffs point to Exhibit E's reference to a "Transaction Balance" maintained by BitInstant. Ex. E at 10. Again, assuming *arguendo* that the Court may properly consider this extrinsic evidence, it only contradicts Plaintiffs' allegations. This language comes from Part 2 of the document, which terms ***apply to Merchants*** as opposed to consumers, and which defines "Transaction Balance" as funds that ***belong to a Merchant*** but may be temporarily held by BitInstant in case of a dispute between a Merchant and BitInstant. *See* Ex. E §§ 1.19, 11, 12. Plaintiffs' contentions do not amount to plausible allegations that BitInstant held consumer assets.

Plaintiffs next argue that "[w]hether BitInstant holds consumer assets is a question of fact that is not susceptible to a motion on the pleadings." Opp'n at 6. But Plaintiffs' wishing does not make it so. And Plaintiffs marshaled no factual allegations plausibly supporting their theory. Furthermore, this argument rests on a clear confusion by Plaintiffs between the standard for evaluating a motion to dismiss with that for evaluating a motion for summary judgment. Under the correct standard, Plaintiffs' deficient allegations, taken as true, "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**B. BitInstant Does Not Conduct "Transfers" of "Funds"**

Plaintiffs do not, and cannot, seriously dispute that BitInstant does not conduct "transfers" of "funds" within the meaning of the EFTA. Paragraph 35 of the Complaint merely tracks the

statutory language of what constitutes an electronic fund transfer and states the conclusion that BitInstant performed such transfers. Plaintiffs have no answer for the argument, set forth in BitInstant's Motion, that the delivery of purchased bitcoins is not a transfer of "funds" under the EFTA. And in support for their claim that the payment of money for the purchase of bitcoins to BitInstant is a "transfer," Plaintiffs only point to Exhibit F, which is an email purportedly sent by BitInstant to one of the named Plaintiffs that refers to a "recent transfer." Opp'n at 7. The Court should disregard this email that is not incorporated in or integral to the Complaint. Moreover, even if the Court considers the email, the use of the common word "transfer" by a customer service employee does not plausibly support the claim that BitInstant conducts "transfers" as that word is used in the EFTA. *See* 15 U.S.C. § 1693a(7).

In sum, Plaintiffs fail to plausibly allege that BitInstant is a "financial institution" whose conduct falls within the scope of the EFTA. As Plaintiffs' only federal claim fails, this Court should decline to exercise supplemental jurisdiction over their state law claims and dismiss the Complaint in its entirety with prejudice.

## III. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE STATE LAW CLAIMS

Although this Court should dismiss Plaintiffs' state law claims on jurisdictional grounds, the Court has an independent basis to dismiss them for failure to state claims upon which relief can be granted.

### A. Breach of Contract and Duty of Good Faith and Fair Dealing

Plaintiffs fails to make plausible allegations in their Complaint regarding each element of a claim for breach of contract under New York law. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). In particular, they fail to identify a binding agreement between them and BitInstant. Their vague reference in paragraph 41 to "one or more terms of service" does not identify particular contracts or the terms of a contract. Plaintiffs attempt to supplement their

Complaint with Exhibit E to the opposition, which they claim shows the terms of use on BitInstant's website and the agreement between them and BitInstant. Opp'n at 8-9. Even assuming the Court may properly consider this document, it fails to cure the deficiencies in their Complaint as it (1) does not identify which Plaintiff, if any, accepted the terms, and (2) bears the date of June 3, 2013, yet the alleged breaches occurred in April 2013. *See supra* at 3, n.1. Furthermore, this document makes no promises about (1) how quickly BitInstant would process consumers' transactions, and (2) whether BitInstant would issue refunds in case of a delay. That is, this "agreement" makes no mention of the promises that Plaintiffs claim BitInstant breached.

Plaintiffs argue that the marketing statements on BitInstant's website should somehow be deemed incorporated into the terms of use. Opp'n at 9. The Complaint makes no allegation that these marketing statements constitute terms of an agreement between the parties. *See* Compl. ¶¶ 14-25, 40-46. Furthermore, these marketing statements bear the "hallmarks of inactionable puffery," which are "declaration of intention, hope, or projections." *See In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 509 (S.D.N.Y. 2009). For example, Exhibit C, which purportedly shows one such marketing statement, provides: "Our service *aims* to make most deposits happen instantly - within a matter of seconds *in ideal cases*, and in an absolute worst-case scenario we will *still aim* to have funds into your exchange account . . . *on average up to 24 hours depending on various conditions.*" Ex. C (emphasis added). These are "generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 643 (S.D.N.Y. 2011), *aff'd*, 714 F.3d 739 (2d Cir. 2013). Similarly, Plaintiffs' single allegation regarding BitInstant's promise to refund its fees merely states that if BitInstant "screw[s] up and fail[s] to deliver on time" it will investigate and refund the fees. Compl. ¶ 21. Such a statement is "incapable of

objective verification" and constitutes inactionable puffery. *See In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 336 (S.D.N.Y. 2007).

**B. Unjust Enrichment**

As with their other claims, Plaintiffs do not provide a substantive response to BitInstant's arguments regarding their unjust enrichment claim. In particular, they do not explain how their Complaint makes sufficient allegations that equity and good conscience require restitution. In response to BitInstant's view that Plaintiffs actually received services for which they paid, Plaintiffs now argue that "BitInstant's services were worthless" because of the purported delays. Opp'n at 11. Plaintiffs' argument, made in their memorandum of law, does not salvage their Complaint, which contains only a single, conclusory paragraph in this regard. *See* Compl. ¶ 50.

**C. Negligence**

Plaintiffs fail to respond to BitInstant's argument that their Complaint fails to identify any duty owed to them by BitInstant beyond any contractual obligations that purportedly existed between the parties. *See Calcutti v. SBU., Inc.*, 223 F. Supp. 2d 517, 522 (S.D.N.Y. 2002). Plaintiffs cite *Kimmell v. Schaefer*, 652 N.Y.S.2d 715, 719 (1996), for the proposition that BitInstant had specialized knowledge, which gave rise to a duty. Opp'n at 13. *Kimmell*, however, is inapposite as it speaks of a duty owed by someone "in a special position of confidence and trust" to the injured party. *Id.* The Complaint fails to make any allegation whatsoever as to BitInstant's purported specialized knowledge or its status as someone in a position of confidence and trust to the Plaintiffs.

**IV. Granting Leave to Amend Would Be Futile**

Plaintiffs should not be granted leave to amend their Complaint because amendment would be futile. *See AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*, 897 F. Supp. 724, 726 (S.D.N.Y. 1995) (citing *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). No

matter how many times Plaintiffs may be granted leave to amend the Complaint, they will not be able to plausibly allege that BitInstant is a financial institution within the meaning of the EFTA. Plaintiffs should not be granted leave to amend their Complaint and engage in a fishing expedition through discovery to piece together a claim that is insufficient as a matter of law. *See KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) ("allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6)").

**CONCLUSION**

Accordingly, this Court should dismiss the Complaint in its entirety pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367(c)(3).

Dated: New York, New York.
October 24, 2013

Respectfully submitted,

Perkins Coie LLP
30 Rockefeller Center, 22th Floor
New York, NY 10112-0085
212.262.6900

By: /s/ Keith W. Miller
Keith W. Miller
Jalina J. Hudson
Jean-Jacques Cabou (*Pro Hac Vice*)
*Attorneys for BitInstant, LLC*